UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

DEON ELTING,

                Plaintiff,

    - against -

TASHEKA LASSITER, DELTA
BAROMETRE, AND JOHN AND JANE
DOES 1-10,

                Defendants.

**ORDER**

22 Civ. 8573 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Deon Elting is a former inmate at Otisville Correctional Facility. He brings this case pursuant to 42 U.S.C. § 1983 against Corrections Officer Tasheka Lassiter and Superintendent Delta Barometre. (Am. Cmplt. (Dkt. No. 36) ¶¶ 1, 40-55) Plaintiff asserts that Defendant Lassiter subjected him to "cruel and unusual punishment through repeated sexual assaults" in violation of the Eighth Amendment, and that Defendant Barometre was deliberately indifferent to serious risks to his safety. (Id. ¶ 1)

        Pending before the Court is Defendant Barometre's Rule 12(b)(6) motion to dismiss. (Def. Mot. (Dkt. No. 44)) For the reasons stated below, Barometre's motion will be granted.



## BACKGROUND

I.  **FACTS**[1]

    A.  **The Sexual Assaults**

Between May 2019 and March 2020, Plaintiff Elting was an inmate at Otisville Correctional Facility ("Otisville"), a prison operated by the New York State Department of Corrections and Community Supervision (the "Corrections Department"). (Am. Cmplt. (Dkt. No. 36) ¶¶ 6, 10)[2] While incarcerated at Otisville, Plaintiff worked as an Aggression Replacement Training facilitator in Building 107. (Id. ¶ 11)

Defendant Barometre is Otisville's superintendent. In that capacity, she was "personally involved in setting and reviewing staffing plans and policies." (Id. ¶¶ 8, 30)

Corrections Officer Lassiter was assigned to Building 107 at Otisville, where Plaintiff worked. (Id. ¶¶ 7, 11)

The Amended Complaint alleges that Officer Lassiter sexually assaulted Plaintiff on numerous occasions at Otisville.

In May 2019, shortly after Officer Lassiter was assigned to Building 107, she asked Plaintiff to "show her his penis." (Id. ¶¶ 11-13)

The next day, Officer Lassiter "told plaintiff to retrieve something from the [Aggression Replacement Training] transitional services room." (Id. ¶ 14) She "then followed plaintiff into the room and ordered him to pull his pants down," saying that otherwise "she would

---

[1] The Court's factual statement is drawn from the Amended Complaint. The well-pleaded facts alleged in the Amended Complaint are presumed true for purposes of resolving Barometre's motion to dismiss. See Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017).

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

2

pull her pin and claim [that] plaintiff [had] raped her." (Id.) "Out of fear, plaintiff complied, and [Officer Lassiter] proceeded to perform oral sex on plaintiff without plaintiff's consent." (Id. ¶ 15) Following this incident, Plaintiff "requested two weeks off of [his assignment in Building 107] in an effort to avoid [Officer Lassiter]." (Id. ¶ 16)

Two weeks later, Plaintiff "again encountered" Officer Lassiter. (Id. ¶ 17) Lassiter "told [P]laintiff that his counselor wanted to speak to him" in a separate room. (Id.) Once Plaintiff entered the room, he was confronted by two inmates, one of whom "punched Plaintiff." (Id. ¶ 18) Lassiter then threatened Plaintiff, saying that she would delay his "going home date" and that she "kn[ew] his mother's address." (Id. ¶ 20) Plaintiff then began "to fear for his family's safety." (Id.)

Between May 2019 and "early 2020," Officer Lassiter "forced" Plaintiff into "repeated[,] near daily acts of unprotected oral sex." (Id. ¶ 21) She also "forced" Plaintiff "to engage in unprotected vaginal sex on three occasions in August 2019." (Id.) These assaults took place in the Aggression Replacement Training transitional services room and in Officer Lassiter's office. (Id.)

On February 19, 2020, "a report was made that [Officer Lassiter] was engaging in over friendly behavior with inmates, including [P]laintiff." (Id. ¶ 24) This report "trigger[ed] an investigation by the Department of Corrections' Office of Special Investigations." (Id.)

B. **Plaintiff's Transfer to Eastern Correctional Facility**

In or about March 2020, Plaintiff was transferred from Otisville to Eastern Correctional Facility ("Eastern"). (Id. ¶ 25) On March 28, 2020 – after his transfer to Eastern – Plaintiff reported Officer Lassiter's misconduct to prison authorities. (Id. ¶ 26)

On July 21, 2020, Officer Lassiter "resigned [from] her position" as a corrections officer. (Id. ¶ 27) The Office of Special Investigations concluded its investigation on December

3

24, 2020, and reported that Officer Lassiter "had engaged in an inappropriate relationship with [P]laintiff and a second inmate." (Id. ¶ 28)

Otisville was audited in 2021, pursuant to the federal Prison Rape Elimination Act (the "PREA"). (Id. ¶ 30)  The audit "reviewed five unsubstantiated or unfounded complaints from March 2020 to present." (Id. ¶ 37)  The ensuing report mentions a "February 2020 complaint," which Plaintiff believes is "the substantiated complaint involving [P]laintiff and another inmate." (Id. ¶ 38)  But this complaint is "only discussed and not reviewed." (Id.)

### C. Allegations Concerning Superintendent Barometre

The Amended Complaint contains the following allegations concerning Superintendent Barometre:

(1) that she was the superintendent at Otisville (id. ¶ 8);

(2) that she knew that "ensuring adequate staffing and supervisory rounds is essential to protecting inmates from sexual assaults" (id. ¶ 29);

(3) that "Barometre was personally involved in setting and reviewing staffing plans and policies, and Barometre knew that the risk of incidents of sexual abuse or sexual misconduct are to be considered among other factors in making staffing decisions" (id. ¶ 30);

(4) that Barometre "allowed the aforementioned abuse to occur by implementing a policy or plan of understaffing Building 107, whereby Lassiter was the only correction officer assigned to continually monitor the building, with supervisory defendants doing rounds approximately every hour" (id. ¶ 31);

(5) that Barometre "had many opportunities to take steps or actions to prevent the assaults on [P]laintiff, including by ensuring the adequate staffing of Building 107 and increasing or randomizing supervisory rounds" (id. ¶ 33);

(6) Barometre's "failure to adequately staff Building 107 or to ensure sufficient supervisory rounds were conducted[] allowed Lassiter to isolate and assault at least two inmates, and to assault [P]laintiff on a nearly daily basis" (id. ¶ 34); and

(7) "Barometre acted in deliberate indifference to [P]laintiff's safety by creating staffing policies that did not adequately ensure [P]laintiff's safety and thereby failed to protect [P]laintiff." (Id. ¶ 35)

## II.     PROCEDURAL HISTORY

On September 15, 2022, Plaintiff filed this action in the United States District Court for the Northern District of New York.  (Cmplt. (Dkt. No. 1))  On September 23, 2022, the Northern District transferred the case sua sponte to this District "in the interest of justice and for the convenience of the parties," pursuant to 28 U.S.C. § 1404(a).  (Transfer Order (Dkt. No. 2))  On October 7, 2022, the case was assigned to this Court.

In a March 1, 2023 letter, Defendant Barometre requested a pre-motion conference in anticipation of her motion to dismiss.  (Mar. 1, 2023 Barometre Ltr. (Dkt. No. 22))  This Court discussed Barometre's proposed motion to dismiss during an April 20, 2023 conference, and authorized Plaintiff to submit an amended complaint by April 27, 2023.  (Apr. 20, 2023 Tr. (Dkt. No. 40) at 8:10-14; Order (Dkt. No. 34))

Plaintiff filed the Amended Complaint on April 27, 2023.  (See Am. Cmplt. (Dkt. No. 36))  On July 7, 2023, Defendant Barometre moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  (Barometre Mot. (Dkt. No. 44))

## DISCUSSION

## I.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d

5

Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and a plaintiff's claim must be "plausible on its face," id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).  Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." Id. at 570.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557).

**B.     Section 1983 Supervisory Liability**

"[42 U.S.C. § 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  The first step in analyzing a Section 1983 claim is to identify the specific constitutional right at issue.  See Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009).  Here,

Plaintiff's deliberate indifference claim is premised on the Eighth Amendment's prohibition against cruel and unusual punishment.

To state a deliberate indifference claim under Section 1983, a plaintiff must plead both objective and subjective elements. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). The objective element requires a plaintiff to allege "'conditions of confinement that objectively pose an unreasonable risk of serious harm to [his] current or future health.'" Tangreti v. Bachmann, 983 F.3d 609, 618-19 (2d Cir. 2020) (quoting Vega v. Semple, 963 F.3d 259, 273 (2d Cir. 2020)).

The subjective element requires a plaintiff to allege "deliberate indifference," which "'means the official must know[ ] of and disregard[ ] an excessive risk to inmate health or safety.'" Id. at 619 (quoting Vega, 963 F.3d at 273). An allegation of "mere negligence" does not suffice. Darnell, 849 F.3d at 36. Moreover, "reckless or intentional action (or inaction)" is only sufficient if it is "the product of a voluntary act (or omission) by the official." Id. at 36 n.16.

"[T]o establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases).

For many years, Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995) was the leading case in this Circuit concerning the requirements for demonstrating a supervisor's personal involvement for purposes of a Section 1983 claim. Under Colon, a Section 1983 plaintiff could show a supervisor's personal involvement by, inter alia, pleading facts showing that the supervisor had "'created a policy or custom under which unconstitutional practices occurred, or

7

allowed the continuance of such a policy or custom.'" Grullon, 720 F.3d at 139 (quoting Colon, 58 F.3d at 873).

In Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020), however, the Second Circuit rejected Colon's approach to supervisory liability in a Section 1983 case.  In Tangreti, plaintiff was an inmate in a Connecticut state prison, and alleged that during her incarceration she had been sexually abused by three correctional officers, all of whom were later terminated from their employment and then prosecuted.  Tangreti, 983 F.3d at 612.  Tangreti sued eight prison supervisors, alleging that they "violated the Eighth Amendment by displaying deliberate indifference to the substantial risk of sexual abuse by the three correctional officers."  Id.  The district court granted summary judgment to all of the supervisors except Defendant Christine Bachmann.  As to Bachmann – a counselor supervisor at the prison – the district court ruled that there were material issues of fact as to whether she should have known that Tangreti faced a substantial risk of sexual abuse.  Id.

The Second Circuit reversed, finding that Bachmann was entitled to summary judgment.  In reaching this result, the court rejected the Colon approach to supervisory liability:

> Following Ashcroft v. Iqbal, 556 U.S. 662 . . . (2009), courts may not apply a special rule for supervisory liability.  Rather, the plaintiff must directly plead and prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id. at 676. . . .
>
> Applying the proper standard, we conclude that there is insufficient evidence in the pretrial record for the inference that Bachmann, through her own actions, displayed deliberate indifference to the substantial risk of sexual abuse.  Even considering only Tangreti's version of the facts, the pretrial record does not support the inference that Bachmann had subjective knowledge that Tangreti was at a substantial risk of sexual abuse.  See Farmer v. Brennan, 511 U.S. 825, 829, 837 . . . (1994).  It is not sufficient, as the district court maintained, that Bachmann should have known of the substantial risk of sexual abuse.

Id. (emphasis in original).

8

The proof against Bachmann included the following: she worked alongside two of the guards who had abused Tangreti and had observed "inappropriate interactions" between Tangreti and one of the guards, whom she believed was "'too close'" to the inmates. Id. at 613 (quoting the district court's order). Bachmann was also aware that Tangreti and this guard "were frequently around each other and that other inmates had complained about their closeness." Id. at 613-14. Bachmann had also "noticed a change in Tangreti's behavior and physical appearance. She appeared 'anxious,' often visited Bachmann's office, and said that she was 'very emotional, crying all the time and she didn't know why.'" Id. (quoting the district court). Tangreti was also "'not getting up, or wearing makeup on a regular basis, and she had definitely gained weight, but not a huge amount.'" Id. at 613-14 (quoting the district court).

Relying on Colon, the district court concluded "that Bachmann was 'conceivably personally involved' in violating Tangreti's rights under the Eighth Amendment[,] either because Bachmann was grossly negligent in supervising the officers or because she failed to act on information indicating that Tangreti was at significant risk of sexual abuse." Id. at 616 (quoting the district court).

In reversing, the Second Circuit found that Tangreti had not proffered evidence sufficient to demonstrate Bachmann's personal involvement in a constitutional violation:

> Given this record, at most it may be said that Bachmann could have or should have made an inference of the risk of sexual abuse. But there is no evidence that she made that inference until October 31, 2014, when she discovered, and questioned Tangreti about, the ongoing sexual abuse. There is therefore insufficient evidence in the pretrial record that Bachmann acted with deliberate indifference to support Tangreti's § 1983 claim. Contrary to the district court's conclusion, it is not enough for Tangreti to show that Bachmann was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had. The deliberate-indifference standard "require[es] a showing that the official was subjectively aware of the risk," Farmer, 511 U.S. at 829, and that showing has not been made.

Id. at 619-20.

9

In sum, the Tangreti court emphasized that a plaintiff asserting a Section 1983 supervisory claim must demonstrate both that the defendant was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that the defendant] . . . also dr[e]w the inference.'" Id. at 619 (quoting Farmer, 511 U.S. at 837). With allegations demonstrating the required mental state, supervisory liability is adequately pled either "if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred." See id. at 617 n.4.

Stone #1 v. Annucci, No. 20-CV-1326 (RA), 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021) illustrates the application of Tangreti. In Stone, prison superintendents faced Section 1983 claims premised on the sexual abuse of inmates by corrections officers. Stone, 2021 WL 4463033, at *1. Plaintiffs argued that the superintendents' failure to enforce "unpredictable and unannounced supervisor rounds" made the sexual abuse possible, because corrections officers were able to have "regular, unmonitored one-on-one access to female inmates." Id. at *11. In considering the superintendents' motion to dismiss, Judge Abrams concluded that – under Tangreti – they could be liable under Section 1983 if they "'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom'" (id. at *8 (quoting Colon, 58 F.3d at 873)), "but only if [the superintendent could] be shown to have acted with the necessary mens rea of deliberate indifference." Id. at *9.

Acknowledging that Tangreti was decided at summary judgment, Judge Abrams went on to conclude that at the pleading stage, mens rea of deliberate indifference can be established by "showing that defendants were on notice of previous instances of sexual abuse." Id. at *10; see also Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 864 (2d Cir. 2021) ("A complaint is allowed to contain general allegations as to a defendant's knowledge, because 'a

10

plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'") (quoting Connecticut National Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987)). Other courts have concluded that notice of a substantial risk of harm is sufficient to plead a policymaker's mens rea of deliberate indifference. See, e.g., Jordan v. Dep't of Correction, No. 22-CV-701 (CSH), 2023 WL 2503376, at *12 (D. Conn. Mar. 13, 2023) ("Whereas merely being on notice of a risk of constitutional violation would be insufficient on summary judgment, courts tend to be more lenient at the pleading stage to allow plaintiffs the opportunity to gather evidence to establish a defendant's mens rea."); Myers on behalf of Est. of Myers v. Davenport, No. 21-CV-0922 (LEK) (CFH), 2022 WL 3017367, at *7 (N.D.N.Y. July 29, 2022) ("[T]o meet the subjective prong of the Eighth Amendment deliberate indifference standard at the motion to dismiss stage, Plaintiff must: [first,] allege facts that give rise to an inference that Supervisory Defendants knew of a risk of serious harm to the [plaintiff] and [second,] allege facts sufficient to reasonably infer Supervisory Defendants disregarded that risk by failing to enact adequate policies to protect against it.").

  Applying Tangreti and its progeny here, Plaintiff must plead factual allegations demonstrating that (1) Barometre "'bore the responsibility for creating or allowing the continuance of'" the staffing policies and customs at Otisville; (2) the staffing policy "proximately caused" the harm and constitutional violation Plaintiff allegedly suffered; and (3) Barometre "possessed the requisite mens rea to be held liable for [deliberate indifference]." Stone, 2021 WL 4463033, at *7, *10 (quoting Pusepa v. Annucci, No. 17-CV-1765 (RA), 2019 WL 690678, at *7-8 (S.D.N.Y. Feb. 19, 2019)). As to the last element, Plaintiff must plead facts showing that it was brought home to Barometre that her policies regarding staffing and

11

supervisory rounds presented a substantial risk of sexual assault to the inmates.  See id. at *7-*10.

## II. ANALYSIS

Plaintiff Elting contends that Defendant Barometre "acted in deliberate indifference to [his] safety by creating staffing policies that did not adequately ensure [P]laintiff's safety and thereby failed to protect [P]laintiff."  (Am. Cmplt. (Dkt. No. 36) ¶ 35) According to Plaintiff, Barometre knew that staffing "is essential to protecting inmates from sexual assaults," but she failed to ensure adequate staffing and supervisory rounds in connection with Building 107.  (Id. ¶¶ 29-31, 35).

In moving to dismiss, Barometre contends thpat the Amended Complaint does not plead facts showing that she (1) "was personally involved in any alleged constitutional violation"; or (2) "had the subjective knowledge that Plaintiff was at a substantial risk of being sexually assaulted."  (Barometre Br. (Dkt. No. 45) at 9, 11)

As to Barometre's responsibility for staffing policies, Plaintiff pleads that, "according to a [Prison Rape Elimination Act] audit," Barometre "was personally involved in setting and reviewing staffing plans and policies."  (Am. Cmplt. (Dkt. No. 36) ¶ 30)  As to causation, the Amended Complaint alleges that Barometre "implement[ed]" a policy of understaffing Building 107, resulting in "Lassiter [serving] as the sole officer on duty" at that location.  (Id. ¶¶ 31, 32)  And because of Barometre's policy providing for supervisory rounds only once an hour – and her failure to "randomize[e] supervisory rounds" – Lassiter was "allowed . . . to isolate and assault at least two inmates, and to assault plaintiff on a nearly daily basis."  (Id. ¶¶ 31, 33-35)  These allegations are sufficient to plausibly allege that Barometre's policies regarding staffing and supervisory rounds caused the "reasonably foreseeable

12

consequence" of "[Officer Lassiter]'s sexual abuse of Plaintiff." Pusepa, 2019 WL 690678, at *7-8 (listing similar examples).

As to the remaining mens rea element, and as discussed above, Plaintiff must plead facts showing that it was brought home to Barometre that her policies regarding staffing and supervisory rounds presented a substantial risk of sexual assault to Otisville inmates. See Stone, 2021 WL 4463033, at *7, *10.

In asserting that she has met this standard, Plaintiff argues that

> defendant Barometre was subjectively aware from PREA audits and [Corrections Department] regulations that ensuring adequate staffing and supervisory rounds is essential to protecting inmates from sexual assaults. . . . Yet, Barometre disregarded this risk when she staffed Building 107 with a ratio of one female correction officer to up to 100 male inmates, and failed to ensure adequate supervisory rounds, thereby creating an environment in Building 107 that allowed [Officer] Lassiter to easily engage in repeated sexual acts with at least two inmates, over an extended period of time.

(Pltf. Opp. (Dkt. No. 46) at 9 (citing Am. Cmplt. (Dkt. No. 36) ¶ 29))

The 2021 PREA audit (see Am. Cmplt. (Dkt. No. 36) ¶ 37) did not, and could not have, put Barometre on notice that Plaintiff was at risk of sexual assault, however, because the audit took place long after Plaintiff suffered sexual abuse and after Plaintiff had left Otisville in March 2020. (See id. ¶ 25)

As to Corrections Department regulations, the Amended Complaint's only mention of these regulations is as follows:

> The supervisory defendants, including Barometre[,] knew from PREA audits and [Corrections Department] regulations that ensuring adequate staffing and supervisory rounds is essential to protecting inmates from sexual assaults.

(Id. ¶ 29) Plaintiff pleads no facts concerning the content of the regulations, and does not explain in any fashion how these regulations brought home to Barometre that Plaintiff was at risk of sexual assault.

13

And while the Amended Complaint asserts that "[o]n February 19, 2020, a report was made that LASSITER was engaging in over friendly behavior with inmates, including plaintiff, triggering an investigation by [the Corrections Department's] Office of Special Investigations. . . ." (id. ¶ 24), Plaintiff does not allege that this report was made to Barometre, or that the report otherwise came to her attention, prior to Plaintiff's transfer from Otisville.

Finally, the Amended Complaint does not contain any allegations suggesting that Defendant Barometre was on notice of the risk of sexual abuse that Plaintiff faced because of "previous instances of sexual abuse" at Otisville.  See Stone, 2021 WL 4463033, at *10.

In sum, the Amended Complaint's allegations concerning Barometre are not sufficient to establish the mens rea element of a Section 1983 deliberate indifference claim.

## III.   LEAVE TO AMEND

Plaintiff requests leave to amend in the event that this Court determines that the Amended Complaint's allegations are insufficient as to Barometre.  (Pltf. Opp. (Dkt. No. 46) at 11 n.1, 14)

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).  Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  "Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted" at least once.  Wright v. Ernst & Young LLP, 97 Civ. 2189 (SAS), 1997 WL 563782, at *3

14

(S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Schs., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] [pled]," there is "a strong preference for allowing plaintiffs to amend." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 98 MDL 1963 (RWS), 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).

This Court cannot find – at this stage of the proceedings – that there is no possibility that the pleading defects identified above could be cured. Accordingly, leave to move to amend will be granted.

## CONCLUSION

Defendant Barometre's motion to dismiss (Dkt. No. 44) is granted. Any motion for leave to amend will be filed by **December 28, 2023**. The proposed second amended complaint is to be attached as an exhibit to the motion papers.[3] The Clerk of Court is directed to terminate the motion (Dkt. No. 44).

Dated: New York, New York
December 14, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[3] The stay regarding discovery as to Barometre will remain in place, because it remains unclear whether Plaintiff can adequately plead a Section 1983 claim against her. While Plaintiff contends that the discovery stay should be lifted (Pltf. Opp. (Dkt. No. 46) at 11-12), the mere filing of a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678.